IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, L.P.
                Plaintiff,

v.

CHARTER COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS
OPERATING, LLC, and COXCOM, INC.,
                Defendants.

CASE NO. 2:06-CV-507 [TJW]

## DEFENDANT COXCOM, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant CoxCom files this Reply to Rembrandt's Opposition and in further support of its motion to dismiss.

### I.      ARGUMENT AND LEGAL AUTHORITY

**A.      Dismissal is Appropriate Under the First to File Rule.**

      1.      <u>Federal Circuit Law Applies the First to File Rule and Does Not Require the Same Patents at Issue.</u>

While the Federal Circuit has recognized a few exceptions to the generally-applicable first to file rule, it continues to enforce the rule and only recognizes exceptions when there are additional facts in the case that would make it unjust or inefficient to continue the first-filed case. *See, e.g.*, *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) ("[t]here must . . . be sound reason that would make it unjust or inefficient to continue the first-filed action), *overruled in part on other grounds by, Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995); *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (the first to file rule should generally be followed in patent cases absent a "sound reason" that would make proceeding unjust or unreasonable). There are no such facts in this case. In fact, Rembrandt has sued Cablevision for infringement of the '903 Patent and other patents in the District of Delaware. (Mot. to

Dismiss, Ex. 7.)  That action is pending in the same judicial district and before the same judge as CoxCom's first-filed action.  Moreover, Judge Steele, of the District of Delaware, has already expressed an interest in at least coordinating discovery between the various Rembrandt actions pending in Delaware.  (Exhibit 1 at 3-4.)

The Federal Circuit has not held, as Rembrandt urges, that "the same patents and the same parties" are required to constitute parallel actions for the purposes of the first to file rule. (Opp'n. at 4.)  Rembrandt's "same patents and same parties" test stems from language in which the Federal Circuit defined a term for use in its opinion.  *Id.; see Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326 (Fed. Cir.  2004).  However, the Federal Circuit did <u>not</u> hold, because the question was not presented, that actions require the same patents and the same parties to be suitable for first to file treatment.  *See Lab. Corp. of Am. Holdings*, 384 F.3d at 1332-33.  If the first-filed action "can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum," the action should proceed.  *Genentech*, 998 F.2d at 938.  In this case, and in the Delaware Action, all of the patents are directed to the same functionality, operability,  and communications step.  Specifically, the patents are directed to facilitating communications between a modem, a receiver, and a controller, and to providing high speed internet access through the cable system with cable modems communicating with head-ends.  Therefore, the Delaware court must resolve the same or substantially similar issues to address the invalidity and non-infringement of the '903 Patent, as those to be addressed for the patents at issue here.

2.  <u>Filing On the Same Day Does Not Prevent Application of the First to File Rule,
and Rembrandt's Cited Case Law is Distinguishable.</u>

Rembrandt argues that the first to file rule does not apply because the two lawsuits were filed in the same day, with CoxCom's declaratory judgment action filed four hours prior to this

2

action.  (Opp'n. at 5-6.)  In making its argument, Rembrandt relies on several district court

opinions, while ignoring <u>controlling</u> Federal Circuit precedent.  (*Id.* at 5 n.15.)  Each of the cases

cited by Rembrandt precede *Lab. Corp. of Am. Holdings*, in which the Federal Circuit affirmed

the district court's order staying a second-filed, infringement action that was <u>filed four and one</u>

<u>half hours </u>after a declaratory judgment action.  384 F. 3d at 1327.  Moreover, unlike the instant

action, none of the cases cited by Rembrandt are patent cases and thus are not governed by

Federal Circuit precedent.  Finally, although Rembrandt asserts that *Beverlly Jewerlly Co., Ltd.*

*v. Tacori Enter.*, No. 1:06-cv-1967, 2006 WL 3304218 (N.D. Ohio Nov. 13, 2006), is an outlier,

it is consistent with Federal Circuit law as set forth in *Lab. Corp. of Am. Holdings.*

      3.    <u>This Case Substantially Overlaps With the Delaware Action, and Application of</u>
            <u>the First to File Rule is Appropriate.</u>

Continuing its erroneous mantra that the first to file rule only applies when the actions

involve exactly the same parties and exactly the same patents, Rembrandt, relies on *Cummins-*

*Allison Corp. v. Glory, Ltd.*, Civ. A. 2-03-CV-358TJ, 2004 WL 1635534 (E.D. Tex. May 26,

2004) and *Datamize, Inc. v. Fidelity Brokerage Services, LLC*, No. 2:03-CV-321-DF, 2004 WL

1683171 (E.D. Tex. Sept. 5, 2003), to contend that the Fifth Circuit's "substantial overlap" test is

as narrow as the non-existent "same parties, same patents" test it seeks to attribute to the Federal

Circuit.  (Opp'n. at 6-8.)  CoxCom does not dispute that Federal Circuit law controls.

*Genentech*, 998 F.2d at 937.  But, there is no practical difference between the Federal Circuit and

Fifth Circuit standards.  Indeed, this district applied the Fifth Circuit standard in both *Cummins-*

*Allison* and *Datamize*, demonstrating that it and the Federal Circuit standard are substantially the

same, and, likely, are virtually identical.  *See Cummins-Allison Corp. v. Glory, Ltd.*, No. 2:03-

CV-358TJ, 2004 WL 1635534 (E.D. Tex. May 26, 2004) and *Datamize, Inc. v. Fidelity*

*Brokerage Services, LLC*, No. 2:03-CV-321-DF, 2004 WL 1683171 (E.D. Tex. Sept. 5, 2003).

Most importantly, *Cummins-Allison* and *Datamize* are distinguishable from the instant action for determining whether or not the first to file rule is applicable.  For example, in *Datamize*, although the patents at issue were related, the court concluded that the two opposing suits involved "different defendants, . . . different accused products, and a different industry." *Datamize*, 2004 WL 1683171, at *4.  Thus, there was "[n]o substantial overlap" because the accused products were products from different industries. *Id.* at *5 (emphasis added).  In contrast to *Datamize*, this action and the Delaware Action involve the same parties (CoxCom and Rembrandt), the same accused activity (providing high-speed internet services), and at least one of the same patents (the '903 Patent).[1]  Moreover, this action and the Delaware Action accuse the same technology and the same industry standard—DOCSIS.

In *Cummins-Allison*, the court held that "[t]he cases need not be identical to be duplicative." 2004 WL 1635534, at *2.  While Rembrandt is correct that the court declined to transfer a suit with different but overlapping patents, the court's ruling was based on considerations of judicial efficiency. *Id.* at *4.  In the first Illinois action, discovery was only a week away from the completion when the plaintiff requested leave to amend its complaint to add the three patents at issue in the later cases.  The Illinois court found that it would not be in the interest of judicial efficiency to add those patents at that stage of the litigation.  The plaintiff then instituted an infringement action in Texas for the patents it was not allowed to add in Illinois. The defendant filed a subsequent declaratory judgment action in Illinois over the same three

---

[1]  Tellingly, Rembrandt states at least four times throughout its Response that it "voluntarily added the '903 patent to this suit the next day as a prophylactic measure and for reasons for judicial economy."  (Opp'n. at 2, 4, and 6.)  This basically self-serving statement is made without further explanation or evidentiary support.  Rembrandt cannot escape that it filed suit in both Delaware and Texas prior to filing this action against CoxCom.  Rembrandt, in amending its complaint, also added the '903 Patent to its suits against Charter and Comcast, neither of which had filed declaratory judgment actions.  Therefore, Rembrandt's continual statements that it amended its complaint to protect itself and for the Court's best interests are dubious at best.

4

patents.  The judge in that action set a scheduling order, but deferred the decision of which case should go forward to the *first-filed* case in Texas.  *Id.* at *3.  The Texas court found that it had jurisdiction between itself and  subsequent second action filed in Illinois based on the first to file rule.  However, it noted with approval that the discovery, depositions, and claim constructions made in the prior Illinois case would be helpful in its case.  *Id.*

In this action, however, the parallel Delaware action has not proceeded beyond the complaint, answer, and introductory motion stages.  No discovery has been taken, and no scheduling order has been issued.  The cases are at the same point.  Therefore, Rembrandt's reliance on these two cases is misplaced, and the first to file rule is applicable to this case and its parallel Delaware Action.

### 4.    The Action Can be Successfully Adjudicated in Delaware.

Rembrandt also contends that the first to file rule does not apply because there are other cases pending in this district involving Rembrandt and, therefore, dismissal and transfer would result in waste and duplication.  (Opp'n. at 9-10.)  However, Rembrandt has filed related litigation in Delaware as well, rendering this argument inapplicable.  (Mot. to Dismiss, Exs. 7 and 8A-8D.)

Rembrandt nonetheless seeks to bolster this claim by citing an Order by Judge Folsom in *Visto Corp. v. Microsoft Corp.*, No. 2:05-CV-546 (DF), denying a motion to transfer.  In that case, the plaintiff, Visto, had a long history of filing cases in this District, and this Court's knowledge of the technology created efficiencies, which justified keeping all of the subsequently-filed cases here.  *See* Exhibit 2 at 6, 8, attached hereto.  Notably, and unlike the instant action, the earlier Visto cases were filed years before the actions at issue, and one of them had even completed trial.  Ex. 2 at 3.  Here, while Rembrandt has filed other cases in this district,

the ones involving the same patents at issue here were either filed the same day as this case or a month earlier. *See Rembrandt v. Comcast*, No. 2:06-cv-506-TJW (filed on the same day); *Rembrandt v. Time Warner Cable*, No. 2:06-cv-369-TJW (filed a month earlier). This Court, therefore, does not have the same technical advantage that justified the denial of the transfer in *Visto*. Thus, there is no substantial institutional knowledge and background regarding the Patents In Suit that justifies making an exception to the first to file rule and not transferring the matter to Delaware.

**B.      Dismissal is Also Appropriate Because This Court Lacks Personal Jurisdiction Over CoxCom.**

      1.      <u>CoxCom is Not Purposefully Directing Activity at Texas or Toward the Residents of Texas.</u>

In 2003, with the exception of a POP node in Dallas, CoxCom assigned all of its Texas assets to Cox Southwest. (Spalding Decl. ¶ 7.) As a result, CoxCom does no business in Texas, owns no assets in Texas, keeps no records in Texas, has no employees in Texas, and does not own or operate any cable systems in Texas. (*Id.* ¶¶ 4, 6.) CoxCom's actions in Texas have not been "continuous and systematic," and, in fact, have been <u>intentionally discontinued</u>.

      2.      <u>The Activities of Affiliates of Cox Communications are Irrelevant to Whether This Court Should Exercise Jurisdiction Over CoxCom.</u>

Absent evidence of an alter ego arrangement, the activities of a parent company are irrelevant in establishing personal jurisdiction over a subsidiary—and vice versa. *3D Sys., Inc. v. Aarotech Lab., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998) (examining jurisdiction based on the specific activities of the respective companies "[o]n its own"); *Hanson Pipe & Prods., Inc. v. Bridge Techs. LLC*, 351 F. Supp. 2d 603, 611-12 (E.D. Tex. 2004), *aff'd*, 160 Fed. Appx. 380 (5th Cir. 2005). Thus, actions of CoxCom's affiliates are irrelevant to resolution of this motion.

US2000 9802751.5 C8490-331049

Rembrandt also claims the POP node in Dallas evidences that CoxCom is directing activity toward Texas sufficient to justify the exercise of personal jurisdiction. Again, however, Rembrandt is in error. The POP node cannot support the exercise of jurisdiction because it is not a continued activity directed toward a Texas resident. (Spalding Decl. ¶ 5.) Moreover, the internet node is not related to the DOCSIS communications that occur between a cable modem and the cable modem termination system in the head-end (*id.* ¶ 5), which are the methods and systems at issue in this litigation (*see* Am. Compl. ¶¶ 17, 23, 29, and 35 (describing Patents in Suit)). The purpose of the node, which is implemented by computer servers in leased space in Dallas, is to connect with CoxCom's national internet backbone to carry traffic from and to its cable systems that are located in several (non-Texas) metro areas throughout the country.

In any event, Judge Clark, <u>whose findings Rembrandt did not challenge</u>, addressed similar arguments against CoxCom by a patentee and found that

> [t]his POP is a transport backbone node for a national IP network and is located in leased office space in Dallas. The POP consists of a network of circuits and equipment for connecting internet protocol traffic traveling across the nation to and from CoxCom's systems located outside of Texas. It is undisputed that the node operates only to carry internet protocol traffic through Texas, not to any Texas residents.[2] In fact, there is no evidence to suggest that CoxCom does any business in Texas at all.

(Mot. to Dismiss, Ex. 1 at 6.) The law is clear that interconnecting national or international networks through assets in Texas does not support personal jurisdiction. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717-718 (5th Cir. 1999) (holding that leasing

---

[2] Rembrandt states that the POP node carried Internet traffic to CoxCom customers in various Texas cities. (Opp'n. at 17). However, Rembrandt has provided insufficient evidentiary support for this allegation that contradicts the declaration of John Spalding (Spalding Decl. ¶ 5) and the findings of Judge Clark. Indeed, all Rembrandt did was to cite to a whitepaper – reviewing the paper shows it actually <u>supports</u> both Mr. Spalding's testimony and Judge Clark's findings by describing how the internet backbone provides for a national internet traffic transport network to support its Voice over Internet Protocol services, not the technology at issue, here. (*See* Opp'n. at 17 n. 66.)

7

[telephone] lines in Texas "for the purpose of connecting two points in Mexico . . . [did] not constitute doing business in Texas").  Finding *Access Telecom* persuasive, Judge Clark also reasoned that "[t]he POP only operates to transfer digitized packets of information as part of a national network, and it is not directly related to any business activity in Texas.  This is not the type of activity which is so substantial and of such a nature to justify the exercise of general jurisdiction."  (Mot. to Dismiss Ex. 1 at 6.)

Indeed, Rembrandt has expressly avoided asserting that the POP node relates to its claims of infringement in such a way as to support a claim of specific personal jurisdiction.  Finally, the purchase of the computer servers used by the POP node and the purchase of related services (such as the space occupied by the servers) also do not support personal jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 408 (1984) ("[m]ere purchases, even if occurring at regular intervals, are not enough to warrant a state's assertion of . . . jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions"); *Shaffer v. Heitner*, 433 U.S. 186, 213 (1977) (ownership of property in forum state unrelated to claim did not support jurisdiction).

3.   Exercising Personal Jurisdiction Over CoxCom Would be Unreasonable and Does Not Comply With Due Process.

 Even if the Court were to find that CoxCom is subject to personal jurisdiction in Texas (which CoxCom denies), the exercise of such jurisdiction would be both unreasonable and unfair.  *See HollyAnne Corp. v. TFT,Inc.*, 199 F.3d 1304 (Fed. Cir. 1999); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.* 148 F.3d 1355 (Fed. Cir. 1998).

When considering the plaintiff's interest in obtaining convenient and effective relief, courts examine "the convenience and effectiveness of relief from the plaintiff's perspective, as

8

generally the first party to file suit chooses the forum." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367-68 (Fed. Cir. 2006).

None of Rembrandt's assertions regarding the importance of Texas as a venue, however, are persuasive. CoxCom no longer conducts business in Texas, therefore it cannot conduct any allegedly-infringing activities there. Furthermore, the State of Texas has no distinct interest in protecting Rembrandt. Rembrandt does not practice the patents it owns, and has no business in Texas other than filing suits here. Rembrandt's assertions that Texas should protect technology development within its borders, when applied to Rembrandt, a New Jersey limited partnership with offices a short thirty miles from the District of Delaware, are disingenuous and unpersuasive. More importantly, according to Rembrandt's own website, it is not in the business of developing technology; its only business is instead to acquire alre<u>ady developed</u> technology and sue or license patents on same. (Mot. to Dismiss Ex. 4.) To implement this business plan, Rembrandt has <u>sued in Delaware</u>, and is also relying on that court to protect its rights.

Given CoxCom's intentional sale of its Texas assets, it would be unfair to subject CoxCom to continued jurisdiction in Texas. That is especially true given that this action can and should proceed in Delaware, where CoxCom was incorporated, where Rembrandt has filed suit enforcing its patents, and where both parties will consequently find the litigation more convenient.

## II.    CONCLUSION

For the reasons set forth above, CoxCom respectfully submits that it would be improper for this Court to exercise either subject matter or personal jurisdiction over it and renews its request to be dismissed from this action, or, in the alternative, transfer this action to the District of Delaware.

9

This the 5th day of March 2007.

Mitchell G. Stockwell
mstockwell@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E.
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
(404) 815-6555 (Facsimile)

*/s/ Michael E. Jones*

State Bar. No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P.O. Box 359
Tyler, Texas 75710
(903) 597-8311
(903) 593-0846 (Facsimile)

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and contemporaneously served upon all counsel who have consented to electronic service on this the 5th day of March 2007. Other counsel shall be served by first class mail.

*/s/ Michael E. Jones*

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

REMBRANDT TECHNOLOGIES, LP

      Plaintiff,

      v.

CABLEVISION SYSTEMS CORPORATION,
and CSC HOLDINGS, INC.

      Defendants.

C.A. No. 06-635-GMS

### JOINT STATUS REPORT

      In accordance with the Court's Notice of Scheduling Conference, dated January 31, 2007 (D.I. 15), counsel for Rembrandt Technologies, LP ("Rembrandt") and counsel for Cablevision Systems Corporation, and CSC Holdings, Inc. ("Cablevision") submit this Joint Status Report in preparation for the Status and Scheduling Conference before the Court on February 13, 2007.  Attached for the Court's consideration is a chart summarizing the parties' proposed schedule for this action. (Exhibit A).

     **1.**      **JURISDICTION AND SERVICE**

      The parties agree that this Court has jurisdiction over the subject matter of, and the parties to, this action and that the defendants have been properly served.

     **2.**      **SUBSTANCE OF THE ACTION**

        **(a)**      **The Parties' Claims and Defenses**

      Plaintiff Rembrandt brought this action against Cablevision alleging infringement of U.S. Patent Nos. 5,243,627 ("the '627 patent"); 5,852,631 ("the '631 patent"); 5,719,858 ("the '858 patent"); 4,937,819 ("the '819 patent"); and 5,008,903 ("the '903 patent") (collectively "the Rembrandt patents").   Rembrandt alleges that Cablevision, by their provision of high speed internet and related services to cable television subscribers, has infringed and continues to infringe the '631, '858, '819, and '903 patents.  Rembrandt also alleges that Cablevision, by

1

their receipt and retransmission over their cable television systems of digital terrestrial broadcast signals that comply with the ATSC Digital Television Standard, has infringed and continues to infringe the '627 patent. Rembrandt further alleges that Cablevision's infringement of the Rembrandt patents has been willful and seeks monetary and other damages it has incurred as a result of Cablevision's willful infringement of the Rembrandt patents. Rembrandt also seeks the entry of a permanent injunction enjoining Cablevision's continued infringement of the Rembrandt patents.

Cablevision denies that it infringes any of the above five patents and further asserts that those patents are invalid and/or unenforceable. Cablevision has brought counterclaims seeking declarations of non-infringement and/or invalidity and/or unenforceability with respect to each of Rembrandt's patents. In the event that Cablevision is found to infringe any valid and enforceable claim of Rembrandt's patents, however, Cablevision submits that Rembrandt will be unable to satisfy the standards recently articulated by the Supreme Court in *eBay Inc. v. MercExchange L.L.C.*, 126 S. Ct. 1837 (2006), for injunctive relief.

### (b) The Patents and Products In Suit

The titles of the patents-in-suit and the areas of technology to which they pertain (as described in the "Field of the Invention" sections of the patents) are:

- The '627 patent - Signal point interleaving technique - "The present invention relates to the transmission of digital data over band-limited channels."

- The '631 patent - System and method for establishing link layer parameters based on physical layer modulation - "The present invention generally relates to data communication protocols, and more particularly, to presetting the link layer parameters per the physical layer modulation in a protocol stack for modems."

- The '858 patent - Time-division multiple-access method for packet transmission on shared synchronous serial buses - "The present invention relates to data communications, and more particularly, to communications systems that have channelized network access, and may transport both synchronous data and variable-bit-rate data such as frame relay (hereafter referred to as packet data), in a time-division multiplexed format."

- The '819 patent - Time orthogonal multiple virtual dce for use in analog and digital networks - "This invention relates to an apparatus and method for a master unit in a multidrop network to communicate to and from a plurality of remote units, using a plurality of host applications using half duplex polled protocols, through the use of time division multiple access techniques."

- The '903 patent - Adaptive transmit pre-emphasis for digital modem computed from noise spectrum - "This invention relates to an apparatus for determining a frequency-dependent signal-to-noise ratio in a communications network so as to allow proper equalization in a transmit pre-emphasis mode."

For each of the patents, there may be multiple products in dispute relating to Cablevision's provision of digital television, voice, and data services. Further, two separate standards, "ATSC" and "DOCSIS," are likely to be implicated by Rembrandt's claims. ATSC ("Advance Television System Committee") is a standard that relates to the receipt and broadcast of digital television signals. Rembrandt's Complaint alleges that the Cablevision infringes the '627 patent through its receipt and retransmission of signals that comply with the ATSC standard. DOCSIS ("Data-Over-Cable Service Interface Specifications") is a specification that describes the operational parameters of equipment that is used for cable networks. Rembrandt alleges that DOCSIS-compliant equipment infringes the '631, '858, '819, and '903 patents.

### (c)    Related Litigations

There are currently eleven other lawsuits pending relating to one or more of the Rembrandt patents at issue here, including six lawsuits in the Eastern District of Texas and five lawsuits in the District of Delaware.[1]  Of the Delaware cases, four of the other suits

---

[1]    In one of the recently-filed Texas lawsuits asserting the '903 patent, *Rembrandt Technologies, LP v. Charter Communications, Inc.* et al. (E.D. Tex. 2:06-cv-507), Defendant CoxCom has made a motion to transfer the case to the District of Delaware. That motion is likely to be fully briefed later this month.

relate to the '627 patent,[2] and the final one relates to the '903 patent.[3]  Although this Court

has not yet issued Notices of Scheduling Conferences in the five Delaware suits, it may be

efficient for discovery to be coordinated in the related Delaware cases to some extent.

### (d)  Additional Information Provided By Cablevision

Cablevision notes that none of the five patents in this action are related, and none of

the patents cites to any of the others.  The five asserted patents contain, in total, more than

100 claims.  Although Rembrandt has not yet identified the claims that it asserts that

Cablevision infringes, based upon Rembrandt's allegations in the Complaint and in other

proceedings, Rembrandt may attempt to assert dozens of claims in this action.  There are

seven inventors named on the five patents; of those seven, there is only one "overlapping"

inventor whose name appears on two of the five patents.  In addition, the patents in suit

involve disparate and complex technologies, will implicate unique infringement, validity, and

enforceability issues, and are likely to involve different witnesses and other discovery.

### 3.  IDENTIFICATION OF ISSUES

The parties agree that the issues to be decided in this matter include at least the

following:

1) whether Cablevision has directly or indirectly infringed one or more claims of

the Rembrandt patents literally or under the doctrine of equivalents;

2) whether any infringement by Cablevision of any claims of the Rembrandt

patents has been willful;

3) whether any of the asserted claims of the Rembrandt patents are invalid;

---

[2] *Rembrandt Technologies, LP v. CBS Corp.*, Case No. 06-727-GMS (D. Del.); *Rembrandt Technologies, LP v. NBC Universal, Inc.*, Case No. 06-729-GMS (D. Del.); *Rembrandt Technologies, LP v. ABC, Inc.*, Case No. 06-730-GMS (D. Del.); *Rembrandt Technologies, LP v. Fox Entertainment Group* et al., Case No. 06-731 (GMS) (D. Del.).

[3] *CoxCom, Inc. v. Rembrandt Technologies, LP*, Case No. 06-721-GMS (D. Del.). Rembrandt has moved to dismiss CoxCom's Complaint for lack of subject matter jurisdiction.

4)      whether Rembrandt's claims for damages are limited and/or barred under the doctrine of laches;

5)      whether Rembrandt's enforcement of any of its patent rights is limited and/or barred under the doctrine of estoppel;

6)      whether Rembrandt's enforcement of any of its patent rights is limited and/or barred due to the existence of any express or implied license and/or patent exhaustion;

7)      whether Rembrandt's claims for damages are limited and/or barred by the patent notice statute (35 U.S.C. § 287(a));

8)      whether Rembrandt's claims are limited and/or barred under the doctrines of patent misuse or unclean hands;

9)      the damages to which Rembrandt is entitled if Cablevision is found to have infringed any valid and enforceable claim of the Rembrandt patents; and

10)      whether Rembrandt is entitled to a permanent injunction enjoining Cablevision's alleged infringement of the Rembrandt patents.

### 4.      NARROWING OF ISSUES

The parties expect that they may be able to narrow the issues as discovery in this case proceeds.

### 5.      RELIEF

Rembrandt requests that this Court award Rembrandt damages adequate to compensate it for such infringement and enter a permanent injunction enjoining Cablevision from making, using, offering for sale and selling products that infringe the Rembrandt patents. According to Rembrandt, the appropriate measure of damages in this case is a reasonable royalty. Rembrandt further requests that the Court enter judgment against Cablevision declaring that Cablevision has infringed the Rembrandt patents and that Cablevision's conduct has been willful, and awarding Rembrandt treble damages sustained as a result of Cablevision's willful infringement.

Rembrandt also seeks recovery of attorney's fees and costs due to the exceptional nature of this case in accordance with 35 U.S.C. § 285.

Cablevision seeks declaratory judgments that each of the patents-in-suit is not infringed and/or invalid and/or unenforceable. Cablevision denies that Rembrandt is entitled to any relief. Cablevision also seeks attorney's fees and costs, due to the exceptional nature of this case, in accordance with 35 U.S.C. § 285.

## 6. AMENDMENT OF PLEADINGS

The parties are not aware of any amendments needed to the pleadings at this time, but reserve the right to amend their pleadings within the time period set forth in the schedule entered by the Court.

## 7. JOINDER OF PARTIES

The parties are not aware of any additional parties that should be joined in this action at this time. The parties, however, reserve the right to move to join parties, if appropriate, within the time period set forth in the schedule entered by the Court.

## 8. DISCOVERY

**Scheduling of Litigation Events.**

The parties' agreement as to the identification and timing of deadlines and events in this action is set forth for the Court's consideration in Exhibit A.

The parties are mindful of the Court's interest in proceeding expeditiously. The parties respectfully submit that the proposed schedule takes account of that interest and is necessary and appropriate, given the number and complexity of the issues raised by Rembrandt's patents, the technology, and the accused products. At present, Rembrandt believes that it will require discovery on at least the following issues:

A. the design, development, and operation of the accused products and services;

B. the identification of the asserted claim(s) and Cablevision's alleged

infringement of those claims;

C.      documents, testimony, and expert opinion materials regarding, infringement, willful infringement, damages and damages amounts.

D.      the factual basis for each party's claims, affirmative defenses, and counterclaims, including any opinion of counsel upon which any party intends to rely;

E.      expert and third party discovery on the above-listed items.

At present, Cablevision believes that it will require discovery on at least the following additional issues:

F.      the validity of the asserted claims and the enforceability of the asserted patents;

G.      the conception and reduction to practice of the claimed inventions;

H.      the prosecution of the patents at issue;

I.      prior art relating to the technology covered by the patents;

J.      Rembrandt and/or its predecessors-in-interest's participation in the standard-setting processes for the ATSC and/or DOCSIS standards;

**Limitations on Discovery.** Rembrandt and Cablevision propose that the parties limit discovery as follows:

1)      **Fact Depositions.**   At this stage of the case, the parties agree that the limitations of depositions contained in FRCP 30(a)(2)(A) should be modified as follows: each side shall be permitted to take a maximum of 175 hours of depositions by fact witnesses, including 30(b)(6) depositions.  Unless otherwise agreed to by the parties, the deposition of an individual non-30(b)(6) witness is limited to one day of seven hours of actual examination. No deposition of any witness shall exceed seven hours of examination in a single day *provided*, however, that: (A) a deposition of an individual inventor shall not exceed fourteen hours over two days, unless that inventor is a named inventor on more than one patent in suit, in which the deposition of such individual inventor may continue for an additional seven

hours over an additional day for each patent in suit on which he or she is named in excess of one; and (B) there shall be no specific hour limit with respect to depositions conducted pursuant to FRCP 30(b)(6), and such depositions may proceed for as many hours as reasonably necessary.

2) In addition, Cablevision believes that no more than 75 of the 175 hours of fact depositions per side should be depositions of parties (i.e., depositions of Cablevision or Rembrandt employees). Rembrandt believes that there should be no such limitation and to the extent any limitation is necessary, it should be to third party discovery.

3) Requests for Admissions shall be limited to fifty (50) per side, excluding Requests for Admissions directed at authenticating documents; and

4) Interrogatories shall be limited to fifty (50) per side.

**9. ESTIMATED TRIAL LENGTH**

The parties estimate that the trial of this case will take a total of twelve (12) days. The parties propose that the trial be scheduled at the court's convenience, consistently with the proposed schedule set forth in Exhibit A.

**10. JURY TRIAL**

Both parties seek a jury trial on all issues that are so triable to a jury.

**11. SETTLEMENT**

The parties have not yet explored the possibility of settlement, but are willing to do so at the appropriate opportunity.

**12. OTHER MATTERS**

Because confidential information will have to be exchanged in this action, the parties agree that a protective order will be necessary and will attempt to agree on the form of such an order.

**13. CONFIRMATION OF RULE 26(f) TELECONFERENCE.**

Counsel for the parties have conferred about each of the above matters.

WOMBLE CARLYLE SANDRIDGE
 & RICE, PLLC

/s/ Kevin M. Baird_____
George Pazuniak (# 478)
Kevin M. Baird (# 4219)
James M. Lennon (# 4570)
AnnaMartina Tyreus (# 4771)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Tel:  (302) 252-4324
Fax:  (302) 661-7725
kbaird@wcsr.com

OF COUNSEL:
Timothy G. Barber
Womble Carlyle Sandridge & Rice, PLLC
One Wachovia Center
301 South College Street, Suite 3500
Charlotte, NC 28202-6037

John F. Morrow, Jr.
Womble Carlyle Sandridge & Rice, PLLC
One West Fourth Street
Winston-Salem, NC 27101

Barry S. Goldsmith
Womble Carlyle Sandridge & Rice, PLLC
8065 Leesburg Pike, 4th Floor
Tysons Corner, VA 22182-2738

*Counsel for Plaintiff Rembrandt
Technologies, LP*


February 9, 2007

RICHARDS, LAYTON & FINGER, P.A.

/s/ Frederick L. Cottrell, III_____
Frederick L. Cottrell, III
Kelly E. Farnan
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19899
farnan@rlf.com

Josh A. Krevitt (admitted *pro hac vice*)
JKrevitt@gibsondunn.com
Charles J. Boudreau (admitted *pro hac vice*)
CBoudreau@gibsondunn.com
Gibson, Dunn & Crutcher LLP
200 Park Avenue
47th Floor
New York, NY  10166

David Segal (admitted *pro hac vice*)
DSegal@gibsondunn.com
Gibson, Dunn & Crutcher LLP
Jamboree Center
4 Park Plaza, Suite 1400
Irvine,  California  92614

Amanda Tessar (admitted *pro hac vice*)
atessar@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1801 California St., Suite 4200
Denver, CO 80202

*Counsel for Defendants Cablevision Systems
Corporation, and CSC Holdings, Inc.*

**Exhibit 2**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| VISTO CORPORATION, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:05-CV-546 (DF) |
| | § | |
| MICROSOFT CORPORATION, | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## ORDER

Before the Court are Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a) (Dkt. No. 21), Plaintiff's Opposition to Defendant's Motion (Dkt. No. 23), Defendant's Reply in Support of Defendant's Motion (Dkt. No. 29), and Plaintiff's Surreply to Defendant's Motion (Dkt. No. 30). The Court has reviewed the applicable law and facts of this case and for the following reasons Defendant's Motion is DENIED.

## (I) BACKGROUND

This is a patent infringement case brought by Visto Corporation ("Visto" or "Plaintiff") against Microsoft Corporation ("Microsoft" or "Defendant"). Visto is incorporated under the laws of Delaware with its principal place of business in California. Microsoft is incorporated under the laws of Washington with its principal place of business in Washington. Visto is a provider of personal and corporate wireless messaging solutions to mobile operators for personal and corporate use. In its suit, Visto alleges that Microsoft has infringed three patents held by Visto: U.S. Pat. No. 6,085,192 ("'192 Patent"); U.S. Pat. No. 6,708,221 ("'221 Patent"); and U.S. Pat. No. 6,151,606 ("'606 Patent"). Generally speaking, the inventions covered by these

patents allow for the secure access and synchronization of various networks. Visto's allegations assert that various Microsoft products and services infringe these patents without license or authority. Visto filed its suit against Microsoft on December 14, 2005.

In the current motion Microsoft seeks a transfer of this case to the Northern District of California. Microsoft points out that *Visto v. Sproqit*, 3:04-cv-651 (N.D. Cal.), is currently pending in that district and was filed on February 17, 2004. *See* Dkt. No. 21 at 1. Microsoft further notes that since *Visto v. Sproqit* involves two of the three patents in this case, transfer is appropriate to avoid substantial overlap between the two cases. *See id.* at 3. Microsoft supports this position by arguing that the private convenience interests of the parties favor transfer and that various statements made by Visto in relation to the *Visto v. Sproqit* case demonstrate that the Northen District of California is Visto's home forum. *See id.* at 7.

Visto argues that Microsoft has not met its burden of demonstrating to this Court that transfer is proper. *See* Dkt. No. 23 at 3. Visto states that its statements in the *Visto v. Sproqit* case did not directly relate to venue issues and thus should not be construed against it in this action. *See id.* at 9. Visto also argues that neither public nor private interests favor transfer. *See id.* at 3. Finally, Visto notes that it has filed a number of other patent suits in the East District of Texas. *Id.* at 2-3.

The Court notes that in fact, Visto has either brought, or is a party in, no fewer than seven patent cases in this district. These cases involve a number of different defendants and include *Visto v. Seven Networks*, Case No. 2:03-cv-333; *Visto v. Infowave*, Case No. 2:03-cv-332; *Visto v. Smartner Info.*, Case No. 2:05-cv-91; *Visto v. Good Technology*, Case No. 2:06-cv-39; *Visto v. Research in Motion*, Case No. 2:06-cv-181; and *Seven Networks v. Visto*, Case No. 2:05-cv-365.

2

The *Visto v. Seven Networks* and *Visto v. Infowave* cases were both filed on September 23, 2003. The *Infowave* case is now closed and the *Seven Networks* case has already gone to trial but remains open. However, the various other cases are still pending, though they were filed after Visto filed the California case on February 17, 2004.

## (II) APPLICABLE LAW

In order to foster efficiency, convenience, and the general principle of comity between the federal courts, Fifth Circuit law allows for transfer of a case under both the "first-to-file" rule and the venue statute found in 28 U.S.C. §1404(a). The "first-to-file" rule is based on "principles of comity and sound judicial administration." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *see generally West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985). The "first-to-file" rule "comes into play when a plaintiff files similar lawsuits in two different federal districts." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1161 n.28 (5th Cir. 1992). The rule allows a district court to dismiss, stay, or transfer a case where "issues presented can be resolved in an earlier-filed action pending in [the first filed] court." *West Gulf*, 751 F.2d at 729.

On the other hand, 28 U.S.C. §1404(a) allows for transfer of a case by a district court to avoid waste, expense, and inconvenience. *See In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999) (citing *State St. Capital Corp. v. Dente*, 855 F. Supp. 192, 197 (S.D.Tex.1994)). Along these lines §1404(a) reads:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a)

The purpose of the statute is to give district courts discretion to evaluate venue issues on a case-by-case basis in light of convenience of the parties and costs to the judicial system. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The first step in determining a motion under § 1404(a) "is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen*, 371 F.3d 201, 203 (5th Cir. 2004). If so, a court must then determine whether an action should be transferred by examining both public and private factors. *See id.*; *see also In re Triton*, 70 F. Supp. 2d at 688. The private factors, which relate to the convenience of the litigants, include:

> (1) the plaintiff's choice of forum; (2) the relative ease of access to the sources of proof; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and, (5) the possibility of delay and prejudice if transfer is granted.

*Id.* (citing *Mortenson v. Maxwell House Coffee Co.*, 879 F. Supp. 54, 56 (E.D. Tex. 1995) and *Walter Fuller Aircraft Sales v. Republic of Philippines*, 965 F.2d 1375, 1389 (5th Cir. 1992)).

The public factors, which reflect the "public interest in the fair and efficient administration of justice," consist of:

> (1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating local disputes; and, (4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult problems in conflicts of laws.

*Id.*

In a motion to transfer venue under § 1404(a) the moving party bears a heavy burden of demonstrating why the factors "'clearly favor such a change.'" *Id.* (quoting *TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 411 (E.D. Tex.1998)). In meeting its burden a defendant may not merely make unfounded assertions, but instead must "establish relevant venue facts by

affidavit, deposition or otherwise." *Id.*; *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754,

756-57 (3d Cir. 1973) (vacating district court's convenience transfer that was based not on

supported evidence but only on "facts and conclusions asserted in defendants' motion").

### (III) APPLICATION

**(A)     The First-to-File Rule and Substantial Overlap**

The "first-to-file" rule may affect an action when there is "substantial overlap" between it

and a pending action in another federal district court. *See Datamize, Inc. v. Fidelity Brokerage

Services, LLC, et al.*, 2004 WL 1683171 (E.D. Tex. 2004). As noted, the rule allows a district

court to dismiss, stay, or transfer a case where "issues presented can be resolved in an earlier-

filed action pending in [the first filed] court." *West Gulf*, 751 F.2d at 729. Microsoft, however,

never affirmatively argues that this Court should transfer the case under the "first-to-file" rule.

Instead Microsoft asserts that "substantial overlap" between this case and *Visto v. Sproqit*

supports transfer under § 1404(a) and the convenience factors. Microsoft principally relies on

two "first-to-file" rule cases: *Charles E. Hill & Assocs., Inc. v. Amazon.com, Inc.*, Case No. 2:02-

cv-186 (E.D. Tex. 2003), and *Datamize, Inc. v. Fidelity Brokerage Services, LLC, et al.*, 2004

WL 1683171 (E.D. Tex. Apr. 22, 2004). In its motion to transfer Microsoft labors to distinguish

this case from *Datamize* and to draw on similarities shared with *Hill & Assocs.* For example,

Microsoft argues that the substantial overlap concepts analyzed in those cases mandate transfer

here because this case involves two patents which are also involved in *Visto v. Sproqit. See* Dkt.

No. 21 at 3-4. Microsoft fails to address, however, the primary difference between those cases

and the one at bar. Both *Hill & Assocs.* and *Datamize* were the only suits filed in this district.

Here, however, Visto has filed several actions. The Court finds that this fact makes the

5

arguments associated with the "first-to-file" rule far less persuasive, if not inapplicable, in this case. The primary reason for this conclusion is that the Eastern District of Texas has a number of cases pending which involve both Visto and at least some of the patents in this case. Microsoft, however, makes no argument that all of these cases were filed after the *Visto v. Sproqit* action in California. In fact, two of the Eastern District of Texas cases, *Visto v. Seven Networks* and *Visto v. Infowave*, were filed well in advance of *Visto v. Sproqit*. The former involves two of the same three patents before the Court in this action. Thus, Microsoft has not adequately demonstrated that the current action "substantially overlaps" with the California case any more than the other actions involving Visto in this district. Consequently, the "first-to-file" rule and any possible overlap carry little weight in the current case and certainly do not mandate transfer.

**(B)      § 1404(a) Convenience Factors**

The initially inquiry in resolving a motion to transfer venue under § 1404(a) is whether the district court to which the movant requests transfer is a district in which the case could have been initially filed. *See In re Volkswagen*, 371 F.3d at 203. The present case is a patent infringement case governed by the venue rules in 28 U.S.C. §§ 1391 & 1400. The Court finds, and the parties do not contest, that venue would have been proper had this case been brought in the Northern District of California. As a result, the Court must move to the second stage of analysis, the private and public factors.

### *(1)      Private Factors*

In evaluating a motion to transfer under §1404(a) the Court takes into account private considerations including (1) the plaintiff's choice of forum; (2) the relative ease of access to the sources of proof; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4)

the place of the alleged wrong; and, (5) the possibility of delay and prejudice if transfer is granted. The Court finds that in this case these factors do not favor transfer.

        (a)     Plaintiff's Choice of Forum

The first factor is Visto's choice of forum. As a general rule, the plaintiff's "right to choose a forum is 'well-established,' and his choice is usually highly esteemed." *See In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d at 688 (quoting *Texas Instruments, Inc. v. Micron Semiconductor*, 815 F. Supp. 994, 996 (E.D. Tex. 1993)). The basis for this deference arises from the adversary system itself and affords counsel the opportunity to serve his client's interests by selecting a forum that is most conducive to his cause. *See id.* at 689 (quoting *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983)). While this factor is neither conclusive nor determinative, *In re Horseshoe*, 337 F.3d 429, 434 (5th Cir. 2003), in most cases the plaintiff's choice of forum "should not be lightly disturbed." *In re Triton*, 70 F. Supp. 2d at 689.

In its motion Microsoft argues that Visto's choice of forum should be given little weight in light of past arguments made by Visto. *See* Dkt. No. 21 at 7. Microsoft notes that the parties in *Visto v. Sproqit* were originally involved in a declaratory judgment action brought by Sproqit against Visto in the Minnesota District Court and the *Visto v. Sproqit* case was filed in California only after the Minnesota action. Microsoft draws attention to the fact that when Sproqit moved for dismissal of the later-filed California action Visto argued that dismissal would be improper because the Northern District of California was its home forum. *See id.* at 8. Thus, Microsoft argues, the choice of forum factor is of little weight in this case because Visto concedes that its home forum is the Northern District of California. *See id.*

Visto argues that the issues in the *Visto v. Sproqit* case are readily distinguishable. *See* Dkt. No. 23 at 9. Visto notes that *Visto v. Sproqit*, the California action, and *Sproqit v. Visto*, the Minnesota action, are classic examples of a "race to the courthouse" in patent litigation. *See id.* Furthermore, Visto notes that it was not subject to personal jurisdiction in Minnesota and that, in fact, the *Sproqit v. Visto* case was eventually dismissed on those grounds. *See id.* As a result, Visto asserts that its argument in *Visto v. Sproqit* merely requested its own choice of venue as opposed to another forum where Visto was not even subject to personal jurisdiction. *Id.* Thus, Visto argues that its "position taken in *Sproqit* case does not compel that all future patent infringement cases involving the patents in that suit be litigated in California." *Id.* at 10.

Given the facts of this case, the Court finds Visto's argument persuasive. First, Visto's statements in the *Visto v. Sproqit* action are unique in that they were an attempt to avoid transfer of that action to a district which did not have personal jurisdiction over it. Further, even if California is Visto's "home forum," as Microsoft alleges, it does not permanently preclude Visto from choosing another forum when it feels that it is in its best interest. *Cf. In re Triton*, 70 F. Supp. 2d at 689. That is exactly what Visto has done in this case. Visto is a party to six currently pending actions in the East District of Texas. All of these cases involve various patents held by Visto and many of the cases involve some or all of the same patents. While the Court recognizes the expertise of the Northern District of California in regards to patent litigation, it does not find that district to be the only possible venue for Visto's claims. The Court finds that Visto's statements in *Visto v. Sproqit* are not sufficient to outweigh Visto's choice of this forum to pursue its claims. *See id.* At a minimum, Visto's choice of this forum is a factor that weighs against transfer. *See In re Horseshoe*, 337 F.3d at 434.

8

(b) Cost of Obtaining Attendance of Witnesses

The second private convenience factor involves the convenience and associated costs of witnesses attending proceedings in this district. Microsoft asserts that many of the inventors named on the patents in this suit are no longer employed by Visto and live in California. In support of this assertion Microsoft has provided the Declaration of Khoa B. Nguyen, a paralegal at Weil, Gotshal & Manges LLP. *See* Dkt. No. 21 at 7. The declaration lists the internet research done concerning the inventors of the patents and the current residences of those inventors. The declaration asserts that most, if not all, of the inventors who are no longer employed by Visto reside in California. As a result, Microsoft raises concerns about the convenience of this action for those witnesses and the ability of the Court to compel their attendance.

In meeting its burden Microsoft must not merely make unfounded assertions, but instead must "establish relevant venue facts by affidavit, deposition or otherwise." *Z-Tel Comm. v. SBC Comm.*, 331 F. Supp. 2d 567, 571 (E.D. Tex. 2004). Visto properly points out that the information relied on in the Nguyen declaration is suspect at best. The webpages submitted with the declaration do not have the actual addresses of the inventors and also present employment information that is up to five years old. The Court finds that this information is not sufficient to meet Microsoft's burden on this issue. Furthermore, the Court notes that even if the information is accurate, Microsoft has presented no evidence that the witnesses would be unable or unwilling to attend. As a result, the Court finds that this factor does not favor transfer.

(c) Ease of Access to the Sources of Proof

Aside from referring to Visto's statements in *Visto v. Sproqit* that Visto's home forum is in Northern California and that many of its documents are there, Microsoft has not established

9

any facts showing that the parties will have difficulty transporting or accessing any documents or
other evidence.  Given this lack of evidence Microsoft has not met its burden in relation to this
factor.  As a result, this factor does not favor transfer.

(d) Place of the Alleged Wrong

Microsoft does not offer any evidence in relation to this factor.  In any event, Microsoft
offers its products and services throughout the country.  As a result, this District is just as likely
as any other federal district to be a convenient forum under this factor.  Consequently, the Court
finds that this factor does not favor transfer.

(e) Delay and Prejudice if Transfer is Granted

Microsoft argues that transfer of this case to the Northern District of California will
facilitate efficiency and avoid delay since that court also has *Visto v. Sproqit* before it.  On the
other hand, Visto points out that cases in this district typically move along faster than those in the
Northern District of California.  In response, Microsoft notes that transfer would allow
coordination of this case with the California case because two of the three patents involved in
this case are at issue in the California case.  Microsoft argues that this could foster judicial
economy during claim construction proceedings.  The Court, however, notes that two of the three
patents are also involved in the Eastern District of Texas case, *Visto v. Seven Networks*.  At the
present time claim construction has already occurred in both *Visto v. Sproqit* and *Visto v. Seven
Networks*.  Thus, neither district is necessarily advantageous as Microsoft argues.  Finally, Visto
argues that "transfers of venue typically result in delay."  *See* Dkt. No. 23 at 7.  However, delay
and prejudice associated with transfer is only relevant "in rare and special circumstances" and
only if "such circumstances are established by clear and convincing evidence."  *See In re*

10

*Horseshoe*, 337 F.3d at 434. The Court finds that no such circumstances are necessarily present here and that there has certainly been no effort to demonstrate them by clear and convincing evidence. Thus, the Court concludes that this factor is neutral at best and may even favor transfer. Notwithstanding this conclusion, the Court finds that the private factors aggregately weigh against transfer.

### (2)     *Public Factors*

Microsoft does not present any reasons why the public factors favor transfer. Instead Microsoft ostensibly treats the "substantial overlap" concepts found in the "first-to-file" rule as a public factor supporting transfer. For the reasons discussed above, the "first-to-file" rule does not warrant transfer in this case. In addition, even if the Court treats the "substantial overlap" overlap argument as a factor to consider, the Court finds that the traditional §1404(a) public interest factors are more applicable and persuasive in this case. Those factors, as follows, do not favor transfer in this case.

#### (a)     Backlog and Other Administrative Difficulties

Defendant does not affirmatively present any evidence regarding this factor. As a result, the Court notes that the defendant has not met its burden of establishing that this factor supports transfer. The Court further notes, however, that even if Defendant had presented evidence on this factor, it is still unlikely to support transfer. For example, Plaintiff notes that the Eastern District of Texas routinely brings cases to trial seven to thirteen months faster than the Northern District of California. *See* Dkt. No. 23 at 7 & Exh. F. Furthermore, transfer of this case may lead to various administrative difficulties given the delay often associated with transfers of venue. *See Z-Tel*, 331 F. Supp. 2d at 578. Given that Microsoft has presented no evidence that transfer

of this case will not lead to such a backlog or that the Northern District of California is any better

suited than this Court to adjudicate this case, the Court finds that this factor does not favor

transfer.

        (b)      The Fairness of Placing the Burdens of Jury Duty on the Citizens of the
State with the Greater Interest in the Dispute

Microsoft has presented no evidence that this factor is in issue or supports transfer. The

Court finds that, given the national distribution of Microsoft's products and services, the citizens

of this District have just as equal an interest in the resolution of this action as do citizens of any

other forum. Thus, the Court finds that the burden placed on potential jurors in this District is on

par with the burden of potential jurors in Northern California. As a result, this factor does not

favor transfer.

        (c) Local Interest in Adjudicating Local Disputes

For the same reasons, the Court notes that citizens in this District have a substantial

interest in correcting any wrongdoing involved in this case. *See In re Triton*, 70 F. Supp. 2d at

691. Microsoft has not presented any evidence to the contrary. The Court finds that this factor

does not favor transfer.

        (d) Conflict of Laws

The final public interest factor involves the appropriateness of having the case in a

jurisdiction in light of any potential problems in conflicts of laws. It is unlikely that any conflict

of law difficulties will arise in the case given the statutory nature of patent litigation. Also, the

Federal Circuit will review any substantive issues arising in this case, regardless of which district

court hears the case. In this respect this District will be no different from any other federal

district court.  Since Microsoft has presented no evidence to the contrary the Court notes that this

factor also does not weigh in favor of transfer.  Consequently, the Court finds that the public

factors, as a whole, weigh against transfer.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendant's Motion to Transfer

Venue (Dkt. No. 21) is hereby **DENIED**.

**SIGNED this 27th day of September, 2006.**


_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE